UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| RICH & RICH PARTNERSHIP, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-436-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| POETMAN RECORDS USA, INC., et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The defendants, Poetman Records USA and Michael Johnathon ("Poetman"), filed a motion for summary judgment, R. 122. They seek to have claims that the plaintiff ("Rich & Rich") asserted against them dismissed. For the reasons provided below, Poetman's motion is granted in part and denied in part. Rich & Rich filed a motion for partial summary judgment that is denied. R. 124. The other defendants in this case are not a part of either motion.

## BACKGROUND

At the center of this litigation are two music albums. Rich & Rich created the first album and then signed a contract with Poetman to market that album. Three years after the marketing contract ended, Poetman released an album of its own. Poetman's album was similar to Rich & Rich's, because they both contained some of the same songs and similar artwork. Following the release of Poetman's album, Rich & Rich filed this lawsuit. Rich & Rich alleges, among other things, copyright infringement and breach of contract. The facts of this case are as follows, with disputed facts noted.

## I.      The Rich & Rich album

In 1996, David E. Rich and Robert E. Rich formed the Rich & Rich partnership.  Rich & Rich signed a contract with the defendant, Planet III Audio Recording Services, LLC, ("Planet III"), on September 5, 1996, to make a music album.  R. 124, Ex. 2 ("Johnson Dep.") at 46-47; R. 18, Ex. A..  The album was titled, "The Kentucky Wildcat Basketball Fan Experience/True Blue" ("Rich & Rich album").  R. 124, Statement of Uncontested Facts ("Rich & Rich Facts") at 1.  If it was not clear from the album's title, the focus of the album was University of Kentucky ("UK") basketball.  Johnson Dep. at 56-57.  The cover of the album had, among other things, a basketball with a UK logo on it ("basketball artwork").  R. 112 ¶ 122.  The UK Pep Band performed some of the songs; there were also audio highlights from UK basketball games. Johnson Dep. at 56-57.

One track stood out from the others.  In that track, David Rich brought together the greatness of Kentucky lore.  Rich mixed former Governor Happy Chandler's *a cappella* rendition of "My Old Kentucky Home" with recorded crowd noise from UK's Rupp Arena ("Chandler remix").  *Id.* at 32-39.

In 1998, Rich & Rich obtained a copyright registration for the album.  R. 123, Ex. 4.  The registration was for a "compilation of sound recording of Kentucky Wildcat games and band recordings."  *Id.*  Rich & Rich registered the basketball artwork on its album on March 8, 2010—after this litigation commenced.  *See* R. 145, Ex. 1.

## II.      Marketing contract with Poetman

At the recommendation of Planet III and its co-owner, Kevin Johnson, a named

2

defendant, Rich & Rich retained Poetman to market its album.  Johnson Dep. at 76-77; R. 124, Ex. 4 ("Johnathon Dep.") at 89-90.  Michael Johnathon, also a defendant, and Tommy Farley owned and operated Poetman.  *Id.*  The contract became effective on August 14, 1998.  *See* R. 123, Ex. 1.  Poetman stopped marketing the Rich & Rich album on January 1, 2000, when the contract terminated.  *Id.* ¶ 12.

## III.    The Poetman album

In 2003, Poetman produced a music album as a fundraiser for the UK Pep Band—not as a commercial venture.  R. 134, Ex. 5 ("Johnathon Aff.") at 2-3.  Some of the songs from the Rich & Rich album, including the Chandler remix and some of the UK Pep Band songs, were also on the Poetman album.  R. 123, Ex. 8 at 3.  In addition to a similar track list, the artwork on the Poetman album was like the basketball artwork on the Rich & Rich album.  *Id.*  Poetman obtained the graphic from the UK Pep Band and did not know that Rich & Rich owned any interest in the graphic. Johnathon Aff. at 2-3.  Poetman, acting on its own accord, destroyed the first production run of its album because the artwork looked too similar to Rich & Rich's basketball artwork.  *Id.* at 3.

On March 3, 2003, Rich & Rich first learned about the existence of the Poetman album. R. 123, Ex. 10.  That month, David Rich sent an email to Collegiate Licensing Company ("CLC") protesting the Poetman album.  R. 136 at 5.  Rich & Rich had paid a royalty to CLC to use the UK trademark, but Poetman had not.  R. 18 ¶ 91.  In November 2003, Poetman executed a non-exclusive license with CLC to use the UK trademark on its album.  R. 123, Ex. 11 at 1.  CLC was aware of Rich & Rich's claims when it executed the license. R. 123, Ex. 10.

3

Eventually, Rich & Rich's contract with CLC ended due to low album sales.

**IV.    Disputed Facts**

The parties dispute various facts in this case.  The material disputes are noted here.

**A.    Marketing contract**

Poetman claims that Rich & Rich's expert, Lisa M. Davis, stated that Poetman adequately marketed the Rich & Rich album in the first year of the project but not in the second year.  R. 123 at 3 (citing R. 123, Ex. 13).  Rich & Rich disputes this, and it asserts that Ms. Davis said that Poetman appeared to be "violating terms of the contract right away."  R. 136 at 5 (quoting R. 123, Ex. 13 at 2).

When the contract ended on January 1, 2000, Poetman claims that it returned all its remaining inventory of the Rich & Rich album.  R. 123 ¶ 20 (citing R. 123, Ex. 14)..  Rich & Rich disagrees and asserts that Poetman had at least 300 copies of the album.  R. 136, Ex. 1 ("Rich Aff.") ¶ 21.  While the parties agree that Poetman had no further obligation to market the album after the contract ended, they dispute whether Poetman violated any ongoing obligations as a fiduciary after the termination of the contract.

**B.    Music similarities**

It is undisputed that Rich & Rich got permission to use Chandler's recording from the Chandler estate and that the Poetman album had the same version of "My Old Kentucky Home" that was on the Rich & Rich album.  R. 134 at 2.  But Poetman disputes that Rich & Rich could—or did—copyright the Chandler remix.  *Id.* at 3; *see also* R. 123 ¶¶ 7-8.  Poetman also claims that it was unaware that both albums had the same version of "My Old Kentucky Home."

Johnathon Aff. at 2-3.  Poetman states that it did not take the Chandler remix directly from the Rich & Rich album.  *Id.*  Poetman received both written and verbal permission to use Chandler's recording of "My Old Kentucky Home."  R. 123, Ex. 9.  However, Rich & Rich argues that Poetman did not receive permission to use the modified version of "My Old Kentucky Home" that appears on both albums.  R. 136 at 4-5.

### C.    Artwork similarities

There is a dispute as to who created the basketball artwork on the Rich & Rich album and who owns it.  Poetman believes that Les Campbell Productions, which is not a party to this litigation, created and owns the design.  R. 123, Ex. 6 at 2, Ans. 3a; R. 123, Ex. 7 at 1.  Rich & Rich believes that Les Campbell Productions created the design at Rich & Rich's direction.  R. 136 at 3-4 (citing Rich Aff. ¶ 23).  Moreover, Rich & Rich believes that the rights to the design were assigned to it in January 1998.  Rich Aff. ¶ 6.  In any event, Rich & Rich claims it is at least a co-owner of the design since David Rich is a co-author of the design, *id.* ¶ 23, and because it got a separate registration for the artwork after this suit was filed.  *See* R. 145.

## V.    Procedural History

On March 3, 2008, Rich & Rich filed this lawsuit.  *See* R. 1.  On May 16, 2008, the plaintiff filed an amended complaint to clarify its statement on diversity jurisdiction pursuant to 28 U.S.C. § 1332.  R. 18.  Rich & Rich alleges that Poetman misrepresented its expertise to fraudulently induce Rich & Rich to sign a contract with it.  *Id.*  Rich & Rich also claims:  breach of contract, breach of a fiduciary duty, intentional interference with existing and prospective business relations and contracts, conversion, trespass to personal property, misappropriation, and

unfair competition.  *See id.*  On December 15, 2009, Rich & Rich amended its complaint and added copyright infringement claims against Poetman for its alleged use of the Chandler remix and the basketball artwork in the album that it released in 2003.  R. 112.

Poetman filed a motion for summary judgment, R. 122, to which Rich & Rich responded, R. 136, and Poetman replied, R. 138.  Poetman seeks to dismiss most of the claims that Rich & Rich asserted.  Rich & Rich filed a motion for partial summary judgment, R. 124, to which Poetman responded, R. 134, and Rich & Rich replied, R. 137.  Rich & Rich seeks to have Poetman found liable for infringing its copyright of the Chandler remix.  Rich & Rich did not move for summary judgment on any other claims.

## DISCUSSION

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court views all evidence in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "'The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could

6

reasonably find for the [non-moving party].'"  *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (alterations in *Moldowan*).

## I.        Copyright infringement

At the heart of any copyright infringement action, there are two questions:  (1) whether the plaintiff owned the copyrighted work, and (2) whether the defendant copied it.  *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 274 (6th Cir. 2009).  Here, the second question is not at issue; namely, the parties do not dispute (for the purposes of these motions) that Poetman used the basketball artwork or the Chandler remix in its album.  The only issue is whether Rich & Rich is the owner of the works and, as a result, has standing to bring these copyright infringement claims.  Because Rich & Rich's registration of the Chandler remix is unenforceable, Rich & Rich's claim that Poetman infringed the Chandler remix copyright must be dismissed.  In contrast, Rich & Rich's copyright infringement claim involving the basketball artwork survives summary judgment.

### A.        Chandler remix

Rich & Rich agrees that the Chandler remix is not its original work.  Rather, Rich & Rich argues that it received a license to create a derivative work of former Governor Chandler's pre-existing recording and is, consequently, the owner of the copyright in the derivative work.  The Court does not need to reach the question of whether Rich & Rich received such a license because its registration of the copyright is unenforceable.

The Copyright Act defines a "derivative work" as:

> [A] work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgement, condensation, or any other form in which a work may be recast, transformed or adapted.  A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work'.

17 U.S.C. § 101.  Before suing for copyright infringement based on a derivative work, the Copyright Act requires copyright holders to register their works with the United States Copyright Office subject to certain exceptions.  17 U.S.C. § 411(a).  A registration for a derivative work must include "an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered."  17 U.S.C. § 409(9).  A copyright registration creates a rebuttable presumption of a valid copyright.  *Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995) (citing 17 U.S.C. § 410(c)).  But in this case, Poetman rebutted the presumption when it pointed out that Rich & Rich did not state in its registration that the Chandler remix was based on Chandler's recording or even which track in the album contained a derivative work.

"[W]hen an applicant knowingly fails to identify the derivative nature of the work, or the use of elements not of the applicant's own creation, the court may decline to enforce the copyright."  *Lenert v. Duck Head Apparel Co. Inc.*, No. 95-31122, 1996 WL 595691, at *4 (5th Cir. Sept. 25, 1996) (citing *Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F. Supp. 980, 987-89 (S.D.N.Y. 1980) (court declined to enforce copyright where applicant knowingly failed to disclose pre-existing work); *GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F.Supp. 763, 774-76 (W.D.N.Y. 1991) (knowing omission of derivative nature permits grant of

8

summary judgment refusing to enforce copyright)).  In other words, a "'knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action . . . or denying enforcement on the ground of unclean hands.'"  *Eckes v. Card Prices Update*, 736 F.2d 859, 861-62 (2d Cir. 1984) (quoting *Russ Berrie*, 482 F.Supp. at 988).  In 1998, David E. Rich registered a work entitled "The Kentucky Wildcat Basketball Experience."  R. 125, Ex. 1 at 1-2.  In that registration, the nature of the copyrighted work was described as a "[c]ompilation of sound recordings of Kentucky Wildcat games and band recordings, with some new sound recording."  *Id.* at 1.  The registration form asked Rich & Rich to "[i]dentify any preexisting work or work that this work is based on or incorporates."  *Id.* at 2.  In response, Rich & Rich identified, "some sound recording."  Rich & Rich did not identify Chandler's original rendition of "My Old Kentucky Home" in its response.  The Copyright Office, without knowing what the pre-existing work was and which track contained the remix, could never have determined whether Rich & Rich's contribution to the Chandler rendition qualified as a derivative work.[1]

Courts can overlook immaterial mistakes in a registration.  *See Lenert*, 1996 WL 595691, at *4 (collecting cases where the failure to disclose the derivative nature of a work did not invalidate the registration).  But Rich & Rich has neither attempted to show evidence that this

---

[1]     Rich & Rich knew that it was taking a work from Chandler and putting it on its album. *Cf. Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 828 (11th Cir. 1982) (omission of pre-existing work did not invalidate the registration because of lack of scienter). That is not disputed and, hence, lack of knowledge cannot excuse the error here.

was a simple mistake nor provided an explanation of why the registration was done in this manner.  *See Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 n.5 (3d Cir. 1990) ("[A] misstatement or clerical error in the registration application if unaccompanied by fraud will not invalidate the copyright nor render the registration incapable of supporting an infringement action." (quoting M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 7.20, at 7-197-98)); *see also Advisers, Inc. v. Wiesen-Hart, Inc.*, 238 F.2d 706, 708 (6th Cir. 1956) ("innocent misstatement . . . in the affidavit and certificate of registration, unaccompanied by fraud" does not invalidate copyright).  Instead, Rich & Rich maintains that the registration is valid because it mentions that Rich & Rich contributed "some sound recording" and "some new sound recording."  R. 137 at 5.  Rich & Rich also points out that it provided the Copyright Office a copy of the album.  *Id.*  However, those statements and the album itself are not enough.  Rich & Rich needed to inform the Copyright Office that the Chandler recording was not Rich & Rich's.  It did not.  Rich & Rich did not even point out what part of the album is a pre-existing work or which track is a derivative work.  *See Lenert*, 1996 WL 595691, at *4 ("[T]he copyright application requires the disclosure of a work's derivative nature; the omission of the work's derivative nature deprives the Copyright Office of the opportunity fully to evaluate the application") (citations omitted).   This error prevented the Copyright Office from fully evaluating the application.

Rich & Rich also contends that it has a valid copyright in the Chandler remix because it registered a compilation of the songs.  It is wrong.  Rich & Rich points to language from a Second Circuit opinion that says: "where the owner of a copyright for a collective work also

owns the copyright for a constituent part of that work, registration of the collective work is sufficient to permit an infringement action under § 411(a) for the constituent part." *Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 68 (2d Cir. 2001), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237 (2010) (citations omitted).[2]  Rich & Rich incorrectly analyzes *Morris*.  That case actually favors Poetman.  In *Morris*, a magazine publisher, Conde Nast, had registered issues of *Allure* as collective works.  *Id.* at 71.  The registered issues contained articles that the plaintiff, a journalist, had written.  *Id.*  Based on Conde Nast's registrations of the issues, the plaintiff argued that the registration requirement was satisfied.  Similar to the facts here, the Second Circuit in *Morris* noted that Conde Nast's registrations did not, among other things, list the plaintiff's articles as pre-existing works.  *Id.* at 72.  The court found that the errors in the registrations could not be overlooked because they rendered the registrations incomplete.  *Id.*  *Morris* held that the registrations did not provide any of the information that § 409 required and did not permit the plaintiff to use those registrations to fulfill the registration requirement.  *Id.*  Likewise, Rich & Rich's registration makes no mention of which track is a derivative work or which pre-existing work was used.  *Morris* actually supports

---

[2]     After the dispositive motions were fully briefed, Rich & Rich filed a notice to inform the Court of the Supreme Court's decision in *Reed*.  *See* R. 142.  The holding in *Reed* did not alter whether a defendant in a copyright infringement suit can raise the registration requirement as a defense to the suit.  *Reed* concluded that the registration requirement of § 411(a) fits in the mold of the other "nonjurisdictional" threshold requirements that claimants must complete, or exhaust, before filing a lawsuit.  130 S.Ct. at 1246-47.  Simply stated, *Reed* held that a court cannot raise the registration requirement *sua sponte* believing it to be a jurisdictional requirement, as the Court of Appeals there did.  *Id.* at 1242.  In the instant case, Poetman—not the Court—raised it.  R. 134 at 6-7.  Thus, *Reed* has no effect on the outcome here.

Poetman's argument that Rich & Rich's registration is unenforceable.

Since the Court dismisses Rich & Rich's copyright infringement claim, Poetman's other arguments, including whether the fair use doctrine saves it from being liable, do not need to be addressed.

### B.    Basketball artwork

Rich & Rich also alleges that Poetman violated a copyright that it owns in the basketball artwork.  Poetman moved for summary judgement on the ground that Rich & Rich was not the owner of that copyright.  However, there is undisputed evidence that Rich & Rich is the owner, and thus, Poetman's motion must be denied.

Rich & Rich registered the basketball artwork.[3]  That registration creates a presumption of validity.  *Hi-Tech Video*, 58 F.3d at 1095.  As the party challenging the copyright, Poetman had the burden to show the copyright was invalid.  *Id.* (citing *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 831 (10th Cir. 1993)).  Poetman has failed to make such a showing.

Poetman argues that the true owner of the basketball artwork is Les Campbell Productions.  However, Rich & Rich introduced evidence that Les Campbell, the owner and president of Les Campbell Productions during the relevant time period, assigned all of his copyright in the basketball artwork to Rich & Rich.  R. 136, Ex. 2 ("Campbell Aff.") at 2; Rich

---

[3]    Rich & Rich noted in its response to Poetman's motion for summary judgment that the registration for the artwork was pending while the parties were briefing Poetman's motion.  R. 136 at 21.  The registration issued, and Rich & Rich entered it into the record on March 26, 2010.  *See* R. 145.  The fact that the certificate of registration was issued after the alleged infringement and the lawsuit was filed does not alter the presumption of validity that the certificate creates.  *See* § 411(a).

Aff. at 2.  While the original written assignment has apparently been lost, Poetman has failed to show that the assignment was not executed or that Rich & Rich lost the assignment in bad faith. Without evidence to the contrary or of bad faith, Campbell's assignment to Rich & Rich is uncontested, admissible evidence that Rich & Rich owns the basketball artwork.  *See* Fed. R. Evid. 1004(1) ("The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if . . . [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith.").

Poetman also contends that Rich & Rich cannot be an owner of the basketball artwork because its contribution to the work was insignificant.  Poetman points out that in answers to interrogatories Rich & Rich conceded it was not a creator of the basketball artwork.  *See* R. 123, Ex. 6 at 3-4.  Whether Rich & Rich is a co-author of the artwork is irrelevant since Campbell assigned his rights in the basketball artwork to Rich & Rich.  Even if Rich & Rich was not a co-author, it would still have complete authority to enforce the copyright because of the assignment.

## II.    Unfair Competition

Rich & Rich brought an unfair competition claim under Ky. Rev. Stat. Ann. § 367.170 and Kentucky common law.[4]  R. 18 at 22.  The Copyright Act does not preempt the unfair competition claim, because it is not equivalent to a federal copyright claim.

Section 301 of the Copyright Act preempts a state law claim if:  (1) the work comes within the scope of the "subject matter of copyright" as set forth in Sections 102 and 103 of the

---

[4]    Rich & Rich concedes that its citation to Ky. Rev. Stat. Ann. § 367.175 in the count on its unfair competition claim, R. 18 at 22, was in error.  R. 136 at 16 n.3.  Thus, its claim under § 367.175 is dismissed.

Copyright Act, and (2) the rights granted under state law are equivalent to any of the exclusive rights within the scope of federal copyright protection.  *Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir. 2004) (quoting *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001)).  Under the second prong of that test, if the state law claim includes an extra element that changes the nature, rather than the scope of the action, then the claim is not preempted.  *Id.* at 301 (citing *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1164-65 (1st Cir. 1994), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237 (2010)).

Rich & Rich alleges that Poetman violated § 367.170.  Under that section, "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" are unlawful.  Whereas a copyright claim seeks to protect the owner's right in its copyrighted material, the elements of § 367.170 relate to unlawful business practices.  If Rich & Rich's only basis for its unfair competition claim was Poetman's alleged misappropriation of the basketball artwork and the Chandler remix, then that claim may be preempted.  *See ATC Dist. Group, Inc. v. Whatever It Takes Transmission & Parts, Inc.*, 402 F.3d 700, 713 (6th Cir. 2005) (dismissing unfair competition claim where the only basis for the claim was misappropriation).  However, Rich & Rich is claiming something different.  Rich & Rich claims that Poetman violated § 367.170 when it allegedly:  (1) made misrepresentations and omissions to Rich & Rich about its capabilities and intentions as a marketing agent, (2) purposely caused the Rich & Rich album to fail so it could release the Poetman album, and (3) incorrectly informed distributors and retailers that the Rich & Rich album was no longer available so they would purchase the Poetman album.  R. 136 at 16-17.  Those types of allegations are all of a different nature than a copyright infringement

14

claim.  Thus, the Copyright Act does not preempt them.

Rich & Rich also asserts an unfair competition claim under Kentucky common law.  *See Covington Inn Corp. v. White Horse Tavern*, 445 S.W.2d 135, 137 (Ky. 1969) ("The common law doctrine of unfair competition has long been recognized and its coverage has been expanded to meet many varying types of business conditions.").  The same allegations mentioned above are the basis of the claim under Kentucky common law so it is not preempted and survives summary judgment.

## III.   Misappropriation

Rich & Rich agrees with Poetman that its claim for misappropriation under state law should be dismissed because the Copyright Act preempts it.  R. 136 at 15.  Thus, that claim is dismissed.

## IV.   Fraud

Poetman asserts that Rich & Rich's fraud claims are time-barred.  But Kentucky's five-year statute of limitations bars Rich & Rich's fraud claims only in part.  The statute of limitations on some of its fraud claims were tolled until March 3, 2003.  *See* Ky. Rev. Stat. § 413.120(12).

Among its allegations of fraud, Rich & Rich states that Poetman failed to properly market and distribute the Rich & Rich album with the intent to produce an album after the contract terminated in 2000.  R. 18 at 11-12.  Rich & Rich discovered this fraud on March 3, 2003, when it learned of the Poetman album.  There is nothing to suggest that Rich & Rich could have known of its injury until March 3, 2003.  So, the statute of limitations was tolled until its discovery.  *See* Ky. Rev. Stat. 413.130(3).  Since Rich & Rich filed suit on March 3, 2008, it was

within the five-year statute of limitations for that fraud claim.

Rich & Rich seems to make a second fraud claim based on Poetman's representations from 1998. The complaint alleges that, "[u]pon reliance on [Poetman's] representations, [Rich & Rich] entered into a valid and enforceable contract with Poetman on August 14, 1998." R. 18 at 10. That fraud claim is time-barred. Because there is no evidence about when Rich & Rich actually knew of this alleged fraud, the critical question is when the alleged fraud ought to have been discovered. *See Madison County v. Arnett*, 360 S.W.2d 208, 210 (Ky. Ct. App. 1962) ("If there were no earlier actual knowledge, the limitation commences to run when by the exercise of ordinary care the fraud ought to have been discovered.") (citations omitted). On March 3, 2003, after David Rich learned of the Poetman album, he began investigating why Poetman's sales targets were not met. R. 136, Ex. 1. In that investigation, he concluded that Poetman lacked qualifications to market the Rich & Rich album. *Id.* Rich & Rich should have considered Poetman's qualifications—or lack thereof—before it signed the marketing contract in 1998. In addition, Rich & Rich should have investigated Poetman's qualifications when it realized the sales goals were not met. Instead, Rich & Rich waited until 2003 to investigate. Rich & Rich then waited until 2008—an additional five years—to file this lawsuit. That is too late. At the latest, the five-year statute of limitations began to run in 2000 when the contract ended. In other words, Rich & Rich should have known that it did not reach sales goal while Poetman was marketing its album. To the extent Rich & Rich is asserting that Poetman misrepresented its qualifications before the parties entered into a contract, that claim is time-barred and dismissed.

16

## V.    Breach of fiduciary duty

The parties agree that Poetman had a fiduciary relationship with Rich & Rich's marketing agent from August 1998 to January 2000. *See Steelvest v. Scansteel Serv. Ctr.*, 807 S.W.2d 476, 485 (Ky. 1991) (stating that a "[fiduciary] relationship is one founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking"). Rich & Rich argues that the duty continued after the contract terminated in January 2000, and on March 3, 2003, Rich & Rich discovered that Poetman breached its fiduciary duty when it learned of the Poetman album. Because the discovery rule does not apply to breach of fiduciary duty claims, Rich & Rich's claim is time-barred. *Bariteau v. PNC Fin. Servs. Group*, 285 F. App'x 218, 223-24 (6th Cir. 2008). The statute of limitations began to run when the alleged breach of duty occurred—not when Rich & Rich discovered it on March 3, 2003.

The catch-all statute of limitations, Ky. Rev. Stat. Ann. § 413.120(7), applies to breach of fiduciary duty claims. *Id.* at 223-24 (citing *Ingram v. Cates*, 74 S.W.3d 783, 787 (Ky. Ct. App. 2002)). In *Bariteau*, the Sixth Circuit noted that the Kentucky court in *Ingram* could have applied the fraud statute of limitations to breach of fiduciary duty claims. *Id.* If *Ingram* had, then the discovery rule would apply to breach of fiduciary duty claims. However, the discovery rule does not apply to the catch-all statute of limitations and, as the Sixth Circuit noted, Kentucky courts are reluctant to extend the discovery rule without authorization from the legislature. *Id.* Similarly, this Court cannot extend the discovery rule to breach of fiduciary

17

claims without guidance from Kentucky courts or its legislature.  Rich & Rich alleges that it discovered Poetman's breach of its fiduciary duty on March 3, 2003.  Consequently, the breach necessarily occurred at some earlier date when Poetman actually created its album.  Rich & Rich did not file this action until March 3, 2008.  At that point, the five-year statute of limitations had run, and hence, the breach of fiduciary duty claim is dismissed.

## VI.   Tortious interference with contractual relationship

Poetman argues that there is no evidence to support the allegations that it interfered with: (1) Rich & Rich's contractual relationships with CLC retailers or (2) any universities with which Rich & Rich hoped to enter into contracts.  These claims are dismissed because Rich & Rich has not responded with evidence to support these claims.

### A.   CLC

For its claim based on the CLC contract, Rich & Rich had to show evidence of the following:  (1) the existence of a contract; (2) defendant's knowledge of this contract; (3) that defendant intended to cause its breach; (4) its conduct caused the breach; (5) this breach resulted in damages to the plaintiff; and (6) the defendant had no privilege or justification to excuse its conduct.  *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1079 (W.D. Ky. 1995).  Poetman asserts that Rich & Rich failed to support its tortious interference claim with evidence.  R. 122 at 8.  Poetman's assertion shifted the burden to Rich & Rich to show that a jury could reasonably find in its favor.  *See Anderson*, 477 U.S. at 252.  Rich & Rich needed to—but did not—provide evidence that the CLC breached its contract with Rich & Rich.  *See Indus. Equip. Co. v. Emerson Elec. Co*, 554 F.2d 276, 289 (6th Cir. 1977).  Rich & Rich merely contends that the CLC

18

cancelled the contract after its album got low sales.  Rich Aff. at 7-8.  A contract can be cancelled legitimately for all sorts of reasons, including in some instances low sales.  Rich & Rich could have established that the CLC breached by including the contract.  It did not.  As a result, this claim must be dismissed.

### B.    Other universities

To claim that Poetman interfered with a prospective contractual relationship, Rich & Rich must show proof that the Poetman "improperly" interfered with its prospective contractual relations.  *Nat'l Collegiate Athletic Ass'n v. Hornung*, 754 S.W.2d 855, 858 (Ky. 1998).  The Kentucky Supreme Court required a showing of malice or some significant wrongful conduct.  *Id.* at 859.  Rich & Rich has shown no such evidence.  To the contrary, it argues that the introduction of the Poetman album is evidence that Poetman sought to interfere with Rich & Rich's prospective relationships with other universities.  "[S]imply attempting to advance one's own legitimate economic interests at the expense of another's interests does not constitute malice."  *ATC*, 402 F.3d at 717 (6th Cir. 2005) (citing *Hornung*, 754 S.W.2d at 859).  Poetman did exactly that—try to advance its own economic interests—when it introduced its album in 2003.  There is no evidence that Poetman contracted with other universities or that it took any actions to sabotage Rich & Rich's work with other universities.  R. 122 at 8.  Because Rich & Rich did not raise any evidence to show that Poetman acted with malice, this claim must also be dismissed.

## VII.   Conversion

Rich & Rich asserts that Poetman improperly converted approximately 300 copies of its

album after the marketing agreement terminated on January 1, 2000. R. 136 at 15. In addition, Poetman allegedly received copies of Rich & Rich's albums from distributors and sellers after the contract ended. *Id.* However, the statute of limitation for "an action for the taking, detaining or injuring of personal property" is two years. Ky. Rev. Stat. Ann. § 413.125. Since Rich & Rich filed this action in 2008, there is no evidence that Poetman took this property within the two years before the action was filed. Thus, the conversion claim is dismissed. If Rich & Rich disagrees with the Court's calculation of the statute of limitations on the conversion claim, it may file a motion to reconsider.

## VIII.  Breach of contract

Rich & Rich points out seven ways that Poetman breached the marketing agreement. R. 136 at 9-10 (citing Rich Aff. at 4-7). For example, Poetman failed to establish a toll-free number for sales. Rich Aff. at 4. Instead, Poetman subcontracted out this work and sent Rich & Rich bills for that work. *Id.* Rich & Rich contends that establishing a toll-free number was part of the marketing agreement. In its reply brief, Poetman does not respond to this claim or any of the other six alleged instances of breach. *See* R. 138. Poetman seems to concede that the contract claims survive summary judgment. R. 138 at 7 (admitting that "[Rich & Rich] is left with at best a stale contract claim."). Because Rich & Rich raises uncontested genuine issues of fact, Poetman's motion must be denied with respect to the contract claims.

## IX.  Agency

Rich & Rich agrees that the agency claim should be dismissed. R. 136 at 8. Thus, that claim is dismissed.

## X.     Punitive Damages

Since punitive damages for breach of contract are not permitted in Kentucky, that claim is dismissed.  *See* Ky. Rev. Stat. Ann. § 411.184 (4) ("In no case shall punitive damages be awarded for breach of contract.").  Also, because the claims for breach of fiduciary duty and conversion are time-barred, punitive damages based on those claims are dismissed.

Poetman contends that Rich & Rich's claim for punitive damages based on fraud should be dismissed because it is time-barred.  As discussed earlier, not all the fraud claims are time-barred.  Since some of the fraud claims survive summary judgment so do the claims for punitive damages based on the remaining fraud claims.  The punitive damages sought on the dismissed fraud claims are likewise dismissed.

## CONCLUSION

Rich & Rich's motion for partial summary judgment, R. 124, is **DENIED**.  Poetman's motion for summary judgment, R. 122, is **DENIED IN PART** and **GRANTED IN PART**.

This the 18th day of May, 2010.



**Signed By:**

*Amul R. Thapar*

**United States District Judge**

21